[Civ. No. 19416. First Dist., Div. Two. Oct. 3, 1962.]

PATRICIA F. PEMBERTON et al., Plaintiffs and Appellants, v. INCE BROTHERS PIPELINE CONSTRUCTION COMPANY et al., Defendants and Respondents.

Edward J. Niland and Boccardo, Blum, Lull, Niland & Teerlink for Plaintiffs and Appellants.

Campbell, Custer, Warburton & Britton, George A. Strong, John P. Whitney and F. H. Pearson, Jr., for Defendants and Respondents.

SHOEMAKER, J.—The plaintiffs Pemberton, husband and wife, commenced the action below to recover damages for injuries sustained when an automobile occupied by them and one Stephen San Filippo struck a mound of dirt while proceeding along Payne Avenue in the City of San Jose. They have appealed from an adverse judgment entered on a jury verdict, contending that the court erred in refusing and omitting certain instructions, and in admitting and refusing to admit certain evidence.

The defendant, Ince Brothers Pipeline Construction Company, a subcontractor of the defendant Santa Clara Construction Company, was installing a storm sewer along the north side of the paved portion of Payne Avenue, an asphalt roadway running generally from east to west, two traffic lanes in width. Ince Brothers' trenching operations along the northernmost edge of the roadway entailed the excavation of a large amount of soil. During the day, this soil covered most of Payne Avenue. Both eastbound and westbound vehicular traffic utilized a bypass along the southerly side of the pavement to avoid the obstruction. Excavated soil which was not used to back-fill the trench was moved some 25 feet south of the roadway into a new subdivision in which residential construction was in progress. At the end of each day, the excavated soil was removed from the southernmost, or eastbound traffic lane and shaped along the open trench and around a trenching machine which was located at the west end of the trench. Conflicting evidence viewed in the light most favorable to the verdict indicates that on the night in question this mound of soil was between 4 to 5 feet in height, and 25 feet in length.

On the night of January 21, 1958, about an hour before the plaintiffs' accident, one Kenneth Heisler, while driving in the eastbound traffic lane of Payne Avenue in the area described, was confronted with the headlights of an automobile approaching in his lane of traffic. When the oncoming automobile was approximately 100 feet away, Heisler swerved to his left, colliding with the mound of soil near its east end. Heisler testified

that he struck the mound while at least partly in the eastbound traffic lane; that his vehicle ultimately came to rest in the bypass area south of the roadway; and that he did not notice the mound of soil along which he was proceeding until after the impact. After the accident, he walked to a nearby home, telephoned his wife and the Highway Patrol, and was then driven home.

Highway Patrol officers arrived at the scene of the Heisler accident at 10 p. m., set out fuse flares, and proceeded with their investigation. Shortly thereafter, witnesses Boehnke and Gage arrived at the scene in a tow-truck. The officers left the scene to interview Heisler, and had proceeded approximately 2 or 2½ miles east on Payne Avenue when, at 10:29 p. m., they received a radio call that a second automobile had struck the mound of soil. The plaintiffs were occupants of the automobile involved in this second accident.

The negligence relied on by plaintiffs was that the defendants[1] had maintained an unilluminated mound of dirt on the roadway, failing to provide motorists with warning of the obstruction. Testimony was elicited from each of the aforementioned persons, as well as from certain of Ince Brothers' employees and the defendant, Earl Ince, as to the size of the mound of soil, the portion of the roadway which it covered, and the extent to which it was illuminated by flare pots and cordoned off by barriers. This testimony was highly conflicting. It is not contended, however, that the state of the evidence on this crucial issue does not warrant a defense verdict. Viewed in accordance with the usual rules of appellate review, the record reveals evidence from which the jury might properly have concluded that the mound of soil and its approaches were sufficiently illuminated and barricaded at the time of both accidents.

The plaintiffs' first contention on appeal stems from the failure of the court to instruct, on its own motion, that evidence of the oral admissions of a party ought to be viewed with caution. The defendant Earl Ince was not present at the trial. His deposition was read to the jury by his counsel. Therein, in response to an inquiry whether he conversed at the scene of the accident with any of the occupants of the San Filippo vehicle, Ince testified to an argument between himself and Pemberton in which the latter stated that he was

---

[1]The named defendants are Ince Brothers Pipeline Construction Company, Earl Ince and Glenn Ince, individually and as copartners in the company, and Earl M. Pellegrini, doing business as Santa Clara Construction Company.

the driver of the vehicle. Ince also testified, as did Highway Patrol Officer Kissner, that Mr. Pemberton appeared to have been drinking. Mr. Pemberton testified in rebuttal that he could not recall the conversation. He denied having told Ince that he was the driver of the car. He and San Filippo both testified that San Filippo was the driver of the car, and that none of them had been drinking during the evening.

The trial court, determining that the evidence raised an issue as to the identity of the driver of the vehicle, instructed that the jury might find Mr. Pemberton guilty of contributory negligence if it found that he, and not San Filippo, was the driver.

A trial court is required by section 2061, subdivision 4, of the Code of Civil Procedure, to instruct a jury on all proper occasions that the testimony of an accomplice ought to be viewed with distrust, and the evidence of the oral admissions of a party with caution. However, the record amply discloses that the court's failure to do so did not result in prejudice to the plaintiffs. (Cf. *Freeman* v. *Nickerson* (1946) 77 Cal.App.2d 40, 63 [174 P.2d 688].) The trial court instructed the jury that the contributory negligence of Mr. Pemberton, if any, would bar only his recovery and not that of his wife, and that any negligence on the part of San Filippo could not be imputed to either of the Pembertons. It informed the jury that, under the evidence, Mrs. Pemberton could not be found negligent, and that if they found the defendants were negligent and their negligence a proximate cause of her injuries, they should return a verdict in her favor. Thus, the issue raised as to the identity of the driver of the vehicle had significance only with respect to the question of Mr. Pemberton's contributory negligence. The jury returned a verdict against both plaintiffs and in favor of defendants. Since contributory negligence was not in issue with respect to Mrs. Pemberton's cause of action, the verdict necessarily reflects a determination in favor of the defendants on the issue either of negligence or proximate cause. Indeed, the jury was instructed that they were to determine these two issues first, and if they found in favor of the defendants on either, they were to cease their deliberations at that point. It follows that the issue of Mr. Pemberton's contributory negligence was immaterial to the outcome of the case and that the plaintiffs could not have been prejudiced by the court's failure to give an instruction which had significance only in relation to that issue. (See *Witt* v. *Jackson* (1961) 57 Cal.2d 57, 69 [17 Cal.Rptr.

369, 366 P.2d 641] ; *Chadwick* v. *Condit* (1962) 205 Cal.App. 2d 313, 316 [23 Cal.Rptr. 245].)

Plaintiffs theorize, however, that the contradictory testimony on these issues created for the jury a question as to the credibility of Ince, the Pembertons, and San Filippo, and that a determination of this question against them would necessarily have tended to influence the jury's appraisal of all their testimony. For this reason, it is argued, the court's failure to give the cautionary instruction was prejudicial. The contention is purely hypothetical. The record discloses evidence other than that adduced from these witnesses which would have supported a verdict either way. It fails to disclose that the verdict depended upon the extent to which the jury accorded credence to these witnesses, or that any jury determination of the credence of these witnesses necessarily resulted from this and no other conflict in the evidence. Under these circumstances, the prejudice claimed by plaintiffs is not shown to. have existed.

The plaintiffs next contend that the court erred in refusing to give their requested instructions on the doctrine of imminent peril. It is argued that the instruction should have been given to qualify the standard of care by which the jury was to measure the reasonableness of the conduct of Heisler and San Filippo. With respect to the conduct of San Filippo, there was no evidence which would have supported such an instruction. To the contrary, he testified that he did not see the mound of dirt until he was within 20 feet of it while traveling at a speed of approximately 30 miles per hour, and that he had no opportunity to swerve before striking the mound. ''Generally it is error to instruct on imminent peril unless at least two courses of action are available to a party after the danger is perceived.'' (*Givens* v. *Southern Pacific Co.* (1961) 194 Cal.App.2d 39, 46 [14 Cal.Rptr. 736] ; see also *Perry* v. *Piombo* (1946) 73 Cal.App.2d 569, 572-573 [166 P.2d 888].) The court did not err in refusing the instruction insofar as San Filippo was concerned. Apart from this, the proposed instruction would have had no relevance except in connection with the reasonableness of Heisler's conduct. However, the reasonableness of his conduct was not a factor bearing on the outcome of the case. The court instructed the jury that if it found that both Heisler and Ince Brothers were negligent and that negligence proximately caused the plaintiffs' injuries, then both would be liable in the absence of contributory negligence. Again, in summarizing

the instructions, the court instructed that if the conditions bringing about the plaintiffs' accident were the result of the negligence of both Heisler and Ince Brothers, then Ince Brothers was to be held responsible. The jury was thus informed that negligence on Heisler's part, if found to exist, would not relieve defendants of liability. Thus, it was immaterial whether his conduct was determined to be reasonable or not. Plaintiffs contend, however, that Heisler's conduct had significance with respect to the issue of proximate cause. It is argued that his conduct might have operated either as a concurring or superseding cause of plaintiffs' injuries, and that whether it amounted to a superseding cause, thus terminating defendants' liability, depended upon whether it was reasonably to be foreseen by them. From this foundation, plaintiffs make the curious argument that it was therefore unnecessary for the jury to decide whether Heisler's conduct was reasonably foreseeable, and that in deciding this question the jury should have had in mind the reasonableness of his conduct. The simple answer to this argument is that the question of whether Heisler's conduct amounted to a superseding cause of plaintiffs' injuries was never before the jury. The instructions given told the jury, in legal effect, that Heisler's conduct could amount to no more than a concurring cause of plaintiffs' injuries, not terminating defendants' liability. The court did not err in refusing the proposed instructions on the doctrine of imminent peril.

The plaintiffs requested a lengthy instruction (proposed instruction number 6) which incorporated sections 470, 465.7, and 473, subdivision (a),[2] of the Vehicle Code then in effect, as well as a portion of a Santa Clara County ordinance relating to the construction of drains along roads in that county, and which informed the jury that violations of these provisions constituted negligence as a matter of law. Section 470 of the Vehicle Code provided: "Detour signs shall be erected at the nearest points of detour from that portion of a highway, or from any bridge, which is closed to traffic while under construction or repair." Section 465.7 provided that the State Department of Public Works shall determine and publicize the specifications for uniform types of warning signs, lights and devices to be placed on the highway by any agency performing work which affects safe movements of traffic on the highway, and that only such signs shall be used.

[2]Now sections 21363, 21406, and 21465.

Section 473 subdivision (a), prohibited the display of unauthorized signs, signals and lights.

Plaintiffs concede that there was no contention in the case that defendants had used unauthorized warning devices in violation of section 473, subdivision (a). They also concede the accuracy of defendant's contention that the portion of the proposed instruction relating to section 465.7 was incomplete in that the proposed instruction did not inform the jury of the types of warning devices which were authorized by the State Department of Public Works. It was further agreed at the trial that the Santa Clara County ordinance which was included in the proposed instruction was inapplicable, inasmuch as the accident occurred within the city limits of the City of San Jose. Nevertheless, plaintiffs now contend that the court erred in refusing the instruction insofar as it set forth the requirements of section 470 of the Vehicle Code.

It is fundamental that a trial court does not err in refusing an incomplete proposed instruction (*Pobor* v. *Western Pac. R. R. Co.* (1961) 55 Cal.2d 314, 324 [11 Cal.Rptr. 106, 359 P.2d 474]), that it has no duty to correct an incomplete instruction (*Shaw* v. *Pacific Greyhound Lines* (1958) 50 Cal.2d 153, 158 [323 P.2d 391] ; *Smith* v. *Sugich Co.* (1960) 179 Cal.App.2d 299, 308 [3 Cal.Rptr. 718]), or to modify or edit a proposed instruction. (*Slovick* v. *James I. Barnes Constr. Co.* (1956) 142 Cal.App.2d 618, 630 [298 P.2d 923] ; *Stapp* v. *Marshburn* (1958) 165 Cal.App.2d 808, 813 [332 P.2d 798, 333 P.2d 351] ; *Flynn* v. *Wallace* (1959) 173 Cal. App.2d 592, 595 [343 P.2d 767].) The court's refusal of the proposed instruction number 6 was justified on any of the aforementioned rules. Had plaintiffs desired a separate instruction on section 470 of the Vehicle Code, they should have requested it.

It is contended that plaintiffs impliedly withdrew that portion of the proposed instruction dealing with the Santa Clara County ordinance when they orally submitted to the court a request that the jury be instructed in the terms of a portion of the San Jose Municipal Code. This submission occurred during a discussion in chambers, in the course of which plaintiff's counsel offered into evidence a provision of that code which provided: ". . . and the person who has made the excavation must maintain proper barricades and lights and assume full responsibility for such excavation." Plaintiffs requested, alternatively, that the jury be instructed according to the above statement. Upon objection by opposing

counsel to the last seven words of the provision, the court stated that it would give the remaining portion of the offered statement. There is nothing in the reported discussion which bears out plaintiffs' claim that the proposed instruction number 6 must be deemed to have been submitted intact except for the portion relating to the Santa Clara County ordinance. However, assuming that plaintiffs' contention is correct, the instruction, although "impliedly modified," was still properly refused by the court on the ground that portions thereof were admittedly defective. The argument that defendants would not have been prejudiced by the incompleteness of the proposed instruction is one which might properly be addressed to this court were defendants appealing from an adverse judgment, but has no bearing on the propriety of the trial court's refusal of the proposed instruction. Nor was the alleged error aggravated by the trial court's sustaining an objection to plaintiffs' inquiry whether a particular witness had seen detour signs in the area. Four other witnesses had previously testified that none were observed. (*Hayes* v. *Harry* (1960) 183 Cal.App.2d 412, 417 [6 Cal.Rptr. 671]; *Guardianship of Levy* (1955) 137 Cal.App.2d 237, 250 [290 P.2d 320]; *Zellers* v. *State of California* (1955) 134 Cal.App.2d 270, 276-277 [285 P.2d 962].)

 The defendant Pellegrini, called as a witness in his own behalf, was permitted to testify over objection that the performance of Ince Brothers on other jobs had led him to believe that they were competent independent contractors, and that on his daytime visits to the instant job site, he had observed no lack of precautions. Plaintiffs contend that the court's error in admitting this testimony accentuated its error in refusing their proposed instruction number 6. The record discloses that Pellegrini's counsel offered the testimony as tending to show that Pellegrini had exercised care in selecting a competent independent contractor for the project. (Cf. 26 Cal.Jur.2d, Independent Contractors, § 20, p. 416.) Plaintiffs correctly point out on appeal that Pellegrini's alleged liability was based upon the inherently dangerous nature of the activity engaged in by the independent contractor, and that his care in selecting a competent contractor was not in issue. However, the record reveals that Pellegrini's testimony was not objected to as being outside the issues framed by the pleadings. Rather, the gist of plaintiffs' objection below was that the offered testimony was not competent to show that Ince Brothers had exercised due care on the particular night in question.

The court's ruling on plaintiffs' objection was made on the basis of the doctrine of multiple admissibility (see *Daggett* v. *Atchison, T. & S. F. Ry. Co.* (1957) 48 Cal.2d 655, 665 [313 P.2d 557]), and plaintiffs participated in posing the decision for the court thusly. At no time was the objection now urged on appeal called to the attention of the trial court. The situation is a proper one for application of the rule that an objection specifying wrong grounds amounts to a waiver of grounds not urged. ■ As stated in *Rupp* v. *Summerfield* (1958) 161 Cal.App.2d 657 [326 P.2d 912], at p. 662: "When inadmissible evidence is offered, the opposing party must object and specifically state the grounds of his objection in such a manner that it clearly informs the court of the point on which a ruling is desired and the proponent of the defect to be corrected. An objection specifying the wrong grounds, or a general objection, amounts to a waiver of all grounds not urged. [Citations.]"

· Judgment affirmed.

Kaufman, P. J., and Agee, J., concurred.

A petition for a rehearing was denied October 18, 1962, and appellants' petition for a hearing by the Supreme Court was denied November 28, 1962. White, J.,* participated therein. Peters, J., was of the opinion that the petition should be granted.

---

*Retired Justice of the Supreme Court sitting pro tempore under assignment by the Chairman of the Judicial Council.