Filed 1/20/26  West v. County of Los Angeles CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ARNETTE WEST, | B324618 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC716104) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Sotelo, Judge.  Affirmed.

Irving Meyer for Plaintiff and Appellant.

Peterson, Bradford, Burkwitz, Gregorio, Burkwitz & Su, Avi Burkwitz and Sherry M. Gregorio for Defendant and Respondent.

Arnette West (appellant) appeals from a judgment following a jury trial on her claims of disability-based association discrimination, failure to prevent discrimination and harassment, failure to provide reasonable accommodation and retaliation against respondent County of Los Angeles (the county). The action was brought under the California Fair Employment and Housing Act. (Gov. Code, § 12900 et seq.) In a general verdict the jury unanimously found in favor of the county on all claims. Appellant argues on appeal the trial court erred in failing to give Judicial Council of California Civil Jury Instruction (CACI) No. 2511, captioned "Adverse Action Made by Decision Maker Without Animus (Cat's Paw)." We find appellant has failed to show error and therefore affirm the judgment.

## BACKGROUND

### Appellant's employment history

Appellant was formerly employed by the county as a deputy probation officer. She began working for the county in 2000 and was discharged in May 2018. Appellant's termination was based on findings regarding two incidents. The first involved discourtesy towards a client and dishonesty in an administrative investigation. The second involved unprofessional conduct; discourtesy to a coworker; failure to follow established rules, regulations, policies and procedures; and failure to exercise sound judgment. Appellant had three prior disciplinary actions on her record from 2009, 2013 and 2014.

On September 8, 2009, an official letter of reprimand was sent to appellant, documenting two incidents during which appellant demonstrated disrespect towards her supervisor. The letter warned appellant that a recurrence of the same or similar

actions would be grounds for more severe disciplinary action, including discharge.

On November 15, 2011, appellant was administratively transferred from the Pasadena to the Foothill office.

On August 14, 2013, an amended notice of suspension was issued to appellant. The letter informed appellant that effective August 22, 2013, through and including September 20, 2013, appellant was suspended for 30 days for conduct unbecoming a peace officer, untruthful statements made during an administrative investigation, failure to cooperate with an administrative investigation, insubordination, and failure to exercise sound judgment. The incident involved two motor vehicle incidents—one was a hit and run involving appellant's motor vehicle, in which appellant refused to cooperate; and the second was appellant having fled the scene of a motor vehicle accident.

In February 2014, appellant was given a temporary administrative reassignment to the San Gabriel area office due to an ongoing investigation.

On November 22, 2014, appellant received another written reprimand for unprofessional conduct in the workplace and failure to exercise sound judgment. This incident involved appellant approaching a coworker in an aggressive manner while using a hostile tone of voice.

On November 10, 2016, appellant was involved in a verbal altercation with a client, during which she spoke to the client in a discourteous, belittling, and disrespectful manner. The incident was investigated by Paula Manning, an investigator from the internal affairs office.

3

On April 7, 2017, appellant engaged in an argument with a colleague. Appellant walked toward the colleague in a confrontational manner, requiring the interference of a third individual who stepped between the two. A fourth individual intervened to de-escalate the situation. A security incident report concerning the incident was filed with the office of security management. Appellant was found to have violated multiple departmental policies.

The incidents were referred to Bureau Chief Richard Giron for disposition. After reviewing the incidents and appellant's prior discipline, discharge was found to be appropriate. Giron was an independent decisionmaker who had no connection with appellant's work, her transfers, or her supervisors. As a result appellant was discharged on May 10, 2018.

**Appellant's requests for transfer**

Appellant argues the evidence shows she repeatedly requested transfers to the Pomona district office so she could be closer to her two disabled sons.[1] One of appellant's sons has a heart condition, and the other was born with cerebral palsy. Appellant began making requests for transfer in 2005 or 2006. She was then informed she had to do a "two-year bid." This meant she had to work two years "to fulfill the bid list obligations." Later, when at the Alhambra office in 2008 or 2009, appellant made another request for transfer. She was informed

---

[1] We disregard appellant's factual assertions that are made without citation to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C) [each brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"]; see *Fernandes v. Singh* (2017) 16 Cal.App.5th 932, 942–943.)

4

by the director that she could not be accommodated. In 2012 appellant made a request at the Pasadena office, where she was then located, for a transfer. She made another request to the new director in 2013 or 2014. After both requests were denied, in 2016 appellant requested a hardship transfer through the union. That request was also denied.[2] Appellant became aware the union was concerned appellant was making problems at her current assignment with the hopes of being transferred to Pomona.

On October 20, 2016, appellant filed a complaint with the Civil Service Commission based on the repeated denials of her transfer requests. In November 2016 Keith Larsen, the director of the San Gabriel office, initiated the internal affairs department review of appellant, who testified she spoke with Giron in 2010–2012, when he was director of the Alhambra office, regarding her request to transfer to Pomona. Ivory Thomas, appellant's union representative, assisted appellant in her efforts to get a transfer closer to her home and recalled Giron's involvement. Appellant further testified Giron knew she was trying to get the transfer for many years, and she believed he retaliated against her by signing the letter of discharge.

After being continued multiple times, appellant's civil service hearing was held on May 14, 2018. Appellant was

---

[2] Appellant was aware she had to have more than two years at a given location before being granted a transfer. She testified the only place where she put in a bid after having more than two years was her last request in 2016. At that time, she was No. 66, the last bid, on the list. The bidding process is based on seniority, whereas a hardship transfer is based on a person's circumstances and is outside of the normal bidding process.

informed for the first time she was terminated from her employment with the county. The representative from the probation department said, "I don't know why we [*sic*] having this meeting. She's no longer a county employee."

Larsen was unaware appellant filed a civil service complaint. He had no authority over appellant's request to transfer to Pomona. While he was aware appellant was trying to get a transfer, that had nothing to do with the internal review process or decision.

Giron was also not involved with appellant's request for transfer. Employee requests for transfer are common. Giron's decision to discharge appellant from county service had nothing to do with her request for a transfer or her civil service complaint. No one ever mentioned to Giron that appellant should be discharged due to her requests for transfer. Giron knew nothing about appellant's sons, nor did he ever speak to appellant about her sons.

**Appellant's request for CACI No. 2511 (cat's paw) instruction**

Trial took place in August 2022. On August 23, 2022, following testimony, the court considered appellant's request it give a modified version of CACI No. 2511. The proposed instruction read:

"In this case, the decision to terminate and/or fail to accommodate [appellant] was made by Richard Giron, even if Richard Giron did not hold any discriminatory-retaliatory intent or was unaware of [appellant's] conduct on which the claim of retaliation is based. County of Los Angeles is still liable for discrimination [or] retaliation if Richard Giron followed a recommendation from or relied on facts provided by another

6

person who had discriminatory [or] retaliatory intent.  To succeed, [appellant] must prove both of the following:  One, that [appellant] filing an appeal with the Civil Service Commission and/or requesting a transfer to the Pomona district office as an accommodation to be closer to her severely disabled children and/or complaints about disability discrimination as a substantial motivating factor for Keith Larsen, Elizabeth Garcia, Kevin Kay, Paula Manning, Marco Menendez, Jeffrey Hickman and/or Debbie Nelson to discriminate and/or retaliate against [appellant], and two, that Keith Larsen, Elizabeth Garcia, Kevin Kay, Paula Manning, Marco Menendez, Jeffrey Hickman and/or Debbie Nelson knew that [appellant] had filed a claim with the Civil Service Commission and/or requested a transfer to the Pomona office as an accommodation . . . to be able to be closer to her two severely disabled children, and/or filed complaints about being discriminated [against] because of a disability which was a substantial motivating reason for Richard Giron's decision to terminate and/or refuse to accommodate [appellant]."

Respondent objected to the instruction on the grounds it was confusing, hard to follow, and mentioned numerous individuals who did not testify.  There was no evidence Giron spoke to any of the individuals mentioned in the proposed instruction with the exception of Garcia, who did not testify.

Appellant argued the instruction should be given if the decision maker relied on information from other people who exhibited discriminatory or retaliatory behavior.  After the court pressed appellant for specific examples of discriminatory or retaliatory behavior on the part of the individuals listed, appellant offered to remove some of the names from the instruction.  Respondent countered that there was no evidence of

retaliatory intent from any of the listed individuals. There was also no evidence that Giron spoke to most of those people or obtained from them any of the information that was being claimed as retaliatory.

After hearing the parties' arguments, the court declined to give the instruction, finding no basis for it in the evidence.

## DISCUSSION

### I. Standard of review

We review a claim of instructional error de novo. (*Suffolk Construction Co., Inc. v. Los Angeles Unified School Dist.* (2023) 90 Cal.App.5th 849, 869.) We do not give deference to the trial court's decision. (*Ibid.*) However, the trial court's decision will not be disturbed unless the court commits an error resulting in a miscarriage of justice. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580.) Instructional error is prejudicial in a civil case where it seems probable the error prejudicially affected the verdict. (*Suffolk Construction, supra*, at p. 870.)

### II. The trial court did not err in declining appellant's proposed instruction

#### A. *The evidence did not support the proposed instruction*

"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence." (*Soule v. General Motors Corp., supra*, 8 Cal.4th at p. 572.) The so-called cat's paw instruction is appropriate where the plaintiff can "present sufficient proof to establish that retaliatory animus on the part of one or more contributors to the decision was a

8

substantial contributing factor in bringing about his dismissal." (*Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 113.)

The trial court found no factual basis in the record to instruct the jury with CACI No. 2511. Appellant disagrees, arguing the evidence at trial supported a cat's paw theory of liability. However, appellant's recitation of the facts purportedly supporting this theory contain no evidence of retaliatory or discriminatory animus on the part of an individual contributing to the decision to terminate appellant's employment.

Appellant contends she presented evidence that at least six individuals involved in bringing about her termination held the requisite animus. Appellant names eight: Elizabeth Garcia, Debbie Nelson, Jeffrey Hickman, Keith Larsen, Kevin Kay, Jim Green, Ms. Williams, and Paula Manning. However, appellant discusses only six individuals, including one not on this list, Dwight Thompson.

Manning was assigned to investigate the two incidents Giron primarily relied on when he dismissed appellant.[3] Appellant argues Manning wrote in her investigative report that appellant was "dishonest" and "evasive." This is not evidence of discrimination or retaliation and does not warrant a cat's paw instruction.

Garcia wrote, received, or was copied on 10 to 12 e-mails concerning appellant's complaint with the Civil Service Commission. Giron admitted having had a 15-minute conversation with Garcia before he made the decision to terminate appellant. However, appellant acknowledges there

---

[3] Appellant fails to provide a citation to the record supporting this fact.

9

was no evidence that appellant's complaint was discussed during the conversation. Appellant fails to point to any evidence Garcia had any retaliatory or discriminatory animus towards appellant or that anything she said contributed to Giron's decision to terminate appellant.

Appellant states Jim Green and Ms. Williams were the "Skelly officers" on appellant's two hearings who knew each of appellant's violations in detail and were in agreement on the discharge. Again, appellant has failed to present evidence of discriminatory or retaliatory animus on the part of these individuals.

Appellant points out Larsen initiated the investigations of appellant after she complained about not being transferred to Pomona and filed her Civil Service Commission complaint. However, Larsen testified he had no understanding of the details of appellant's civil service complaint. Larsen also had no contact with Manning, nor did he exert any influence over the investigations. Appellant points to no evidence Larsen had a retaliatory or discriminatory motive in commencing the investigations or any retaliatory or discriminatory animus towards appellant. Nor does she cite any evidence Larsen exerted any influence over Giron.

Finally, appellant points out Thompson told the probation department appellant was "making problems in [her] current assignment in hopes of being transferred to Pomona." There is no evidence Thompson had any retaliatory or discriminatory animus towards appellant, nor that he had any contact with or influence over Giron.

Appellant has failed to establish any evidence showing a retaliatory or discriminatory animus towards her by any

10

individual who played a significant role in the decision to terminate her.  Giron testified the decision to terminate appellant was entirely his and was made without any consideration of her civil service complaint, her transfer requests, or her sons.  Instead, having reviewed the results of the investigations, he found that discharge was the appropriate form of discipline because appellant's multiple disciplinary matters showed a pattern of behavior that was unacceptable for the department.

No evidence in the record suggests retaliatory or discriminatory animus on the part of any contributor to the decision to terminate appellant.  The trial court did not err in concluding there was no basis for the cat's paw instruction.  (*Reeves v. Safeway Stores, Inc., supra*, 121 Cal.App.4th at p. 113.)

## B. *The proposed instruction was not concise or understandable*

A court may properly refuse to give a jury instruction if it incorrectly states the law, is argumentative or confusing.  (*People v. Parker* (2022) 13 Cal.5th 1, 68.)  Trial courts have no duty to modify proposed instructions to correct deficiencies.  (*Pemberton v. Ince Bros. Pipeline Construction Co.* (1962) 208 Cal.App.2d 167, 174.)

The proposed instruction was long and complex, referencing individuals who did not testify at trial and had no apparent connection to Giron.  In fact, after being pressed by the court, appellant's counsel conceded some of the individuals named in the instruction should be removed.  Appellant has provided no reference to the record suggesting she offered to rewrite or clarify the instruction.

Under these circumstances, in addition to being unsupported by the evidence, the instruction was poorly drafted

11

and difficult to understand.  The trial court properly declined to give the instruction.[4]

## DISPOSITION

The judgment is affirmed.  The County is awarded its costs of appeal.


CHAVEZ, J.


We concur:


LUI, P. J.


SIGGINS, J.[*]

---

[4]     Because we have determined the trial court did not err in declining to give the proposed instruction, we do not reach the question of prejudice.  (*Soule v. General Motors Corp., supra*, 8 Cal.4th at p. 580.)

[*]     Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.